**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-258 |
| v. | : | |
| ODELL QUARN CANNON | : | CIVIL ACTION NO. 11-160 |
| a/k/a Zelly | : | |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                **March 23, 2011**

The defendant, Odell Cannon, who was convicted of possession of a firearm by a convicted felon[1] and possession of body armor by a violent felon,[2] has filed *pro se* motions under 28 U.S.C. § 2255 and Fed. R. Crim. P. 53. In his § 2255 motion, he raises claims of ineffectiveness of counsel and the government's violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding information that would have supported his justification defense. He asserts that his trial counsel was ineffective in failing to object to: his designation as an "armed career criminal" at sentencing; an erroneous jury instruction on the justification defense; the prosecutor's reference to the nature of his prior conviction forming the predicate offense; and, a violation of his right to a public trial. He also seeks resentencing in light of the amendments to the United States Sentencing Guidelines covering the calculation of recency points.

Cannon had filed an earlier motion under Fed. R. Crim. P. 33 requesting a new trial on the ground of newly discovered evidence. In his Rule 33 motion, he contends that the government withheld evidence that would have shown that he was not the aggressor, and

---

[1] 18 U.S.C. § 922(g)(1)

[2] 18 U.S.C. § 931

was acting in self-defense when he was shot. This purported evidence is the same evidence he cites in his § 2255 motions as having been withheld by the prosecutor at his trial. Because the *Brady* claims in both petitions overlap, we shall address them together.

Because his claims are without merit, his motions will be denied.

## Factual and Procedural History

On May 22, 2006, at approximately 1:45 a.m., Coatesville Police Officer Jaworski responded to the sounds of gunshots coming from the 700 block of Diamond Alley in Coatesville. Upon reaching that location, he found Cannon, who was wearing a bulletproof vest, laying on the ground with a gunshot wound. Another man, Omega Peoples, was laying under a minivan. Peoples also had been shot. There were two handguns on the street, one was ten feet from Cannon and the other was two feet from Peoples.

At trial, Cannon's girlfriend testified that many times prior to the shooting incident, she had seen Cannon with the bulletproof vest and the same .357 gun found near him. Pursuant to a search warrant, police recovered fourteen rounds of .357 ammunition from Cannon's car.

Cannon presented a justification defense. He did not challenge his possession of the gun and the bulletproof vest. Instead, he claimed that he had acted with justification based on a threat to his life. He also stipulated that he had a qualifying prior felony conviction.

The jury found Cannon guilty of both charges. He was later sentenced to a mandatory minimum prison sentence of 180 months.

Cannon appealed to the Third Circuit Court of Appeals, which affirmed the judgment

2

of conviction. *United States v. Cannon*, 340 Fed. App'x 826, 827 (3d Cir. 2009). His petition for certiorari was denied by the United States Supreme Court on May 24, 2010. On January 11, 2011, Cannon filed his timely petition under 28 U.S.C. § 2255.

On August 18, 2010, Cannon filed a petition under Rule 33 of the Federal Rules of Criminal Procedure, contending that the government had allegedly failed to produce evidence in accordance with *Brady v. Maryland*. He had attempted to file the motion on September 3, 2009. Apparently, because it was in letter form, it was not docketed by the Clerk's office. We shall treat the Rule 33 motion as having been filed on the earlier date and consider his claims on the merits.

## **Ineffectiveness of Counsel Claims**

Ineffective assistance of counsel claims are evaluated under the familiar two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). First, the petitioner must demonstrate that his attorney's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," considering all of the surrounding circumstances of the particular case and the facts viewed at the time of counsel's conduct. *Strickland*, 466 U.S. at 687-89. Second, if there was a deficiency, he must show that it prejudiced his defense. *Id*. at 691-92. The prejudice prong requires a showing that as a result of the deficient representation, a reasonable probability exists that the result of the proceedings would have been different. *Id*. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*. In other words, the prejudice component focuses on whether counsel's deficient performance renders the result of the proceedings

3

unreliable or fundamentally unfair. *Williams*, 529 U.S. at 393 n.17.

Counsel's performance is deficient only where the defendant can show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Where counsel's conduct falls within the wide range of reasonable professional assistance under the circumstances, it is presumed to be sound strategy. *Id*. at 689.

The performance analysis starts with the presumption that counsel's conduct was part of a sound strategy. This "weak" presumption can be rebutted by showing either that the conduct was not part of a strategy or was part of an unsound strategy. *Thomas v. Varner*, 428 F.3d 491, 499-500 (3d Cir. 2005). Where the record does not explicitly reveal trial counsel's actual strategy or the lack of one, the presumption may be rebutted only by a showing that no sound strategy could have supported the conduct. *Id*. at 500. Where counsel's conduct was part of a strategy devised after an investigation of the law and the facts, "the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.'" *Id*. (quoting *Strickland*, 466 U.S. at 690).

"[O]vercoming the strategic presumption does not, in itself, entitle [the defendant] to relief. It merely gives him the opportunity to show that counsel's conduct fell below objective standards of attorney conduct." *Id*. at 501. In other words, the petitioner still must establish that counsel's performance was objectively unreasonable.

To satisfy the prejudice component, the defendant must establish "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 502 (quoting *Strickland*, 466 U.S. at 694).

4

The prejudice standard is not "a stringent one." *Id*. (citing *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005)). The defendant "need not show that counsel's deficient performance more likely than not altered the outcome in the case - rather, he must show only a probability sufficient to undermine the confidence in the outcome." *Id*. at 502 (citations and internal quotation marks omitted).

Cannon contends that his trial counsel was ineffective for failing to object to the prosecutor's referring to the nature of the predicate offense, the violation of his right to a public trial, and the justification instruction to the jury. He also contends that counsel was ineffective at sentencing because he had not challenged Cannon's status as an "armed career criminal" under 18 U.S.C. § 924(e).

Cannon's failure-to-object claims are meritless. His counsel did not object to the justification jury instruction, any remarks by the prosecutor, and the closing of the courtroom doors during the jury charge because there were no bases for doing so. Any objection would have been frivolous and overruled. Thus, his counsel's performance was not deficient.

## The Justification Instruction

Cannon's complaint about the justification charge rests upon a misunderstanding of the law. He contends that the jury should have been instructed that the government had the burden "to negate beyond a reasonable doubt, the affirmative defense properly raised by the defendant." Contrary to his contention, the burden of proving the affirmative defense of justification is upon the defendant by a preponderance of the evidence. *See United States v. Alston*, 526 F.3d 91, 95 (3d Cir. 2008). The instruction, which was based

5

on the Third Circuit Model Instruction, correctly stated the law and did not shift the burden to prove the charged crimes to the defendant. Any objection to the instruction would have been overruled. Thus, Cannon's claim is meritless.

## Improper Reference to Prior Conviction

Cannon contends that the prosecutor, in his closing argument, referred to the "name and nature of petitioner's prior conviction." He argues that the prosecutor's "sole purpose" was to show his bad character in violation of Fed. R. Evid. 404(b). Cannon is factually incorrect. The prosecutor referred to the predicate offense as a "felony crime of violence . . . punishable by more than one year in prison." He did not mention the specific crime. The prosecutor was merely arguing to the jury that the government had established an essential element of the § 931 offense to which the defendant had agreed by stipulation. The prosecutor did not discuss or otherwise mention, directly or indirectly, what that prior offense was. There was simply no basis for defense counsel to object, especially after his client had entered into a stipulation that he had been convicted of a qualifying crime of violence.

## Right to Public Trial

Prior to the jury charge, the deputy clerk announced that during the jury instructions, no one would be permitted to enter or leave the courtroom. No one who wanted to observe the trial was excluded from the courtroom. Anyone who wished to leave was free to do so; and anyone who wished to remain could. At all other times during the trial, there was free access to and from the courtroom.

There is no evidence that anyone was excluded during the charge. Cannon has not identified anyone who was denied admission to the courtroom. Defense counsel had no

grounds for objecting to the procedure. Therefore, Cannon cannot make out either counsel's deficient performance or prejudice.

## Armed Career Criminal Status

Based on his prior convictions, among which were at least three serious drug offenses or violent felonies, Cannon was deemed an "armed career criminal" for purposes of U.S.S.G. § 4B1.4, subjecting him to the statutory mandatory minimum of 180 months in prison. This classification placed him in criminal history category IV. Given his criminal history category and an offense level of 33, the advisory sentencing guideline range was 188 to 235 months in prison.

After denying motions for departure and a request for a reduction for acceptance of responsibility, the sentencing guideline range was fixed at 188 to 235 months. After consideration of all the factors set forth in 18 U.S.C. § 3553(a), the court imposed concurrent sentences of 180 months on Count I, and 60 months on Count II were imposed.

In his direct appeal, Cannon challenged his designation as an "armed career criminal." His appellate counsel argued that he had been improperly designated as an armed career criminal.

The Third Circuit rejected his argument. Even though it found that Cannon had waived any objection to the presentence report, it concluded that he had been properly designated as an "armed career criminal."

The issue Cannon now raises has already been litigated. Couching his claim as an ineffectiveness of counsel one does not help him. Affirming his conviction, the Third Circuit determined that he had been properly considered an "armed career criminal" under 18 U.S.C. § 924(e). Therefore, his counsel could not be faulted for failing to make a frivolous

7

motion that the Third Circuit established had no merit.

### *Brady* Violation Claim

Cannon argues that the government withheld information that would have supported his justification defense at trial. He contends that the government failed to produce four pieces of evidence: (1) an interview with an unnamed witness; (2) a video tape of Duron Peoples at a shooting range where Peoples allegedly made a comment indicating he was going to shoot the defendant; (3) the statement of Donte Carter; and (4) a statement of Rahlik Gore. This purported evidence, according to Cannon, would have shown that there were persons who had an animosity towards him and/or his brother. He argues that this evidence would have helped him establish his justification defense.

The statements and the video were identified in an affidavit of probable cause attached to a criminal complaint filed on August 12, 2009. The complaint was against Duron Peoples and others for the murder of Jones Suber, Cannon's brother, on October 21, 2006, five months after Cannon was shot and arrested. Cannon claims he did not get this information until his mother sent it to him after the arrest of Duron Peoples for his brother's murder was publicized.

Initially, we note that the affidavit of probable cause was filed on August 12, 2009, almost two years after Cannon was shot and five days before the Third Circuit affirmed his conviction. The government could not have turned over something that it did not have in its possession at the time of Cannon's trial.

### Duron Peoples Video

Cannon complains that he was not provided a video tape showing Duron Peoples at a target range saying, "this is for the boys in the barber shop." According to Cannon, he

8

is one of the boys "in the barber shop" where both he and his brother worked.

The videotape was made in August, 2006. It could not have supported Cannon's contention that he was in imminent fear three months earlier on May 22, 2006.

### Interview of Unnamed Witness

In the affidavit, there is a summary of an interview of an unnamed cooperating witness that took place on November 8, 2006. The witness recounted the incident at a target range where Duron Peoples was target shooting and made the barbershop remark. The taped incident took place in August 2006. The police viewed the tape which confirmed the report of the witness sometime after the November 8, 2006 interview. The witness also stated that Duron Peoples had put out a bounty for killing Suber and Cannon.

Like the video tape, the statement of the cooperating witness relates information and conduct post-dating Cannon's arrest. It would not have supported his claim that there were people intent on shooting him months earlier.

### Donte Carter Interview

The affidavit also contained a reference to an interview of Donte Carter. In the interview, Carter purportedly stated that Duron Peoples solicited him to kill Cannon's brother, Jonas Suber, because Cannon had assaulted his brother, Omega Peoples, on October 21, 2006, while the two were incarcerated at the Federal Detention Center.

Like the video tape, the incident recounted in the interview post-dates Cannon's arrest. Carter was interviewed in November, 2006. The conversation with Duron Peoples he related in the interview had occurred on September 11, 2006. Cannon had been shot almost four months earlier. Thus, any animosity arising out of Cannon's assaulting Omega Peoples at the Federal Detention Center in October, 2006 would not have shown any ill-will

9

at the time of Cannon's arrest.

## Rahlik Gore Interview

With respect to his claim that there was a statement made by Rahlik Gore that was not produced, Cannon does not attach the report nor describe what he contends is contained in it. There is no mention of a Rahlik Gore in the police criminal complaint or the affidavit attached to it. Cannon claims the attorney representing him in a subsequent murder case gave him a copy of a statement Gore gave on June 7, 2006 that supports his justification defense. Although he claims he has a copy, he has not produced the statement nor does he relate what Gore said in the statement.[3] Thus, there is no way we can determine whether any statement purportedly given by Rahlik Gore would have supported Cannon's defense.

Detective Martin testified at Cannon's trial that he had spoken to Gore seven times during the course of his investigation of the Diamond Alley shooting incident. Martin explained that his investigation was on-going and aimed at identifying and arresting the person who shot Cannon. He actually confirmed Cannon's defense theory that Cannon was a victim, legitimizing his fear of death.

At his trial, Cannon knew there had been an interview of Gore. This is not newly discovered evidence. If he did not have Gore's statement then, he could have requested it. In fact, as ordered in response to the defendant's request, Martin, the prosecutor, and Cannon's attorney reviewed the detective's investigative file at the Coatesville Police

---

[3] In response to Cannon's motion, the government raised the issue of Cannon's failure to produce the alleged statement or to describe its content. Cannon's reply addressed other arguments made by the government, but not any regarding the Gore statement.

Department in early November before the trial. Cannon's attorney made no objection or further request for information.

Undisclosed evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). None of the evidence Cannon contends was improperly withheld from the defense would have resulted in a different verdict. Given substantial leeway, defense counsel developed that there had been an ongoing feud between the Cannon and the Peoples factions, and that Cannon was a target of Duron Peoples. Detective Martin testified that the shooting investigation was on-going and he was attempting to identify and arrest the person who had shot Cannon. At no time did Martin characterize Cannon as the aggressor.

The difficulty with Cannon's argument is that despite his conviction, he was carrying a loaded firearm and wearing a bullet-proof vest on a dark street in the early morning hours. Even if he was not the aggressor and was the victim, he still violated the law.

## Sentencing

Cannon seeks to preserve an argument that he should benefit from a change in the calculation of recency points under U.S.S.G. § 4A1.1. Any application of the amendment, assuming that it could be applied retroactively, would not benefit Cannon. Any change in the calculation of the sentencing guideline range could not result in a sentence less than the mandatory minimum of 180 months which was imposed pursuant to 18 U.S. C. § 924(e).

## Certificate of Appealability

In a § 2255 action, a certificate of appealability should be issued only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Cannon has not done so. Thus, a certificate of appealability will be denied.